**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. ______________________

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
OCT 17 2022
JEFFREY P. COLWELL
CLERK

**ROBERT BRADLEY LANARI**

**Plaintiff;**

**v.**

**JARED POLIS,**

**DEAN WILLIAMS,**

**JENNIFER MURPHY,**

**MICHELLE BRODEUR,**

**Lt. SARAH HEISCH,**

**Lt. J. STEVENSON,**

**JEANNIE LIRA,**

**MARY QUINTANNA,**

**SHERRIE DAIGLE,**

**MISTI COOK,**

**CORE CIVIC CORPORATION,**

**CEO, DAMON T. HININGER, CORE CIVIC CORPORATION,**

**BARRY GOODRICH,**

**BRIAN LOVATO,**

**PAUL PACHECO,**

**EDDIE TENORIO,**

**GEORGE TENEFF,**

**JOY PALAMINO,**

**DAVID YOUNG,**

**MYRA L. WALTER,**

**NANCY TAYLOR,**

**MALINDA R. MCMILLIAN,**

**RICH D. GUERRERO Jr., and**

**ZEARN RODRIGUEZ,**

**Defendants.**

---

## COMPLAINT FOR PRISONER'S MOTION

## PURSUANT TO 42 U.S.C. § 1983

---

**COMES NOW,** Robert Bradley Lanari, pro se, of the Crowley County Correctional Facility (CCCF), and hereby requests leave from this Court to certify this instant case as an action for a complaint for conditions of confinement.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**I. The Parties to This Complaint:**

**A. The Plaintiff :**

**Plaintiff No. 1**

Robert Bradley Lanari, pro se, at all relevant times cited in this complaint, is a state inmate, convicted and sentenced to the custody of the Executive Director of the Colorado Department of Corrections, currently confined at the Crowley County Correctional Facility.

Address: 6564 State Highway 96

City & Zip Code: Olney Springs, 81062

County & State: Crowley County, Colorado

Phone: (719) 267-3548

**B. The Defendant(s)**

**Defendant No. (s) 1 - 24 (See, Attachment A)**

**II. Basis for Jurisdiction and Venue:**

**A.** This 42 United States Code § 1983, Complaint is brought against Colorado State officials, and the private contractors from the Core Civic Corporation, including their local officials.

**B.** The federal constitutional or statutory rights violated by state and local officials are listed below:

1. This Court has original jurisdiction pursuant to Title 28 United States Code, Section §1343(a),(1),(2),(3) & (4), because Plaintiff asserts claims to redress the deprivations, under color of Colorado State laws, statutes, ordinances, regulations, custom or usage, of his rights,

privileges or immunity secured by the I,IV,V,VII,IX, and XIV Amendments to the Constitution of the United States of America.

2. This Court also has original jurisdiction pursuant to Title 42 United States Code, Section §1985, to allow Plaintiff to recover damages from Defendants due to injury when Defendants failed to prevent the illegal acts when they had knowledge that the illegal acts were taking place, or were about to occur and did not prevent the violations of the Plaintiffs' Civil Rights under Title 42, United States Code §1983.

3. This Court also has original jurisdiction pursuant to Title 28, United States Code §1332 because there is a complete diversity between the Parties and the amount in controversy exceeds $75,000.00, exclusive of fees and costs.

4. This Court has jurisdiction under Title 28, United States Code, Section §1331 because there exist legal issues involving the interpretation and application of the United States Constitution.

5. This Court also has supplemental or pendant jurisdiction pursuant to Title 28, United States Code, Section §1367 because Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy under Article III, Section 2 of the United States Constitution.

6. This is the proper venue for this lawsuit pursuant to Title 28, United States Code, Section §1391 (b), because a substantial part of the events giving rise to this action occurred in this Colorado District.

**D.** Defendants listed below have acted "under color of law" as follows:

**(See, Attachment B)**

**III. Prisoner Status:**

Plaintiff Robert Bradley Lanari is a convicted and sentenced Colorado State prisoner.

**IV. Statement of Claims:**

**Claim #1 : Conditions of Confinement - Unconstitutional Conditions**

**For The Housing of Offenders at CCCF**

1. The facilities maintenance operations at (CCCF) are in a serious state of disrepair. These conditions are from systemic and gross deficiencies in staffing, facilitation, equipment and procedural defects that deprive offenders of basic health and safety while housed at (CCCF). Inadequate funding for repairs does not excuse the perpetuation of the unconditional conditions of confinement that offenders have been subjected to as a policy matter by the Core Civic Corporation.

2. (CCCF) began operations over 25 years ago. The buildings and other infrastructure are not maintained well due to a lack of skilled staff and offender workers. Repairs are overlooked or ignored because the private prisons main goal is to reduce costs and increase profit to shareholders.

3. Maintenance at (CCCF) is done on an emergency basis instead of a preventive maintenance strategy. Thus, this facility is always in a catch up mode, putting out the most urgent fire, usually without parts to do so. Broken showers, toilets that needed parts to flush them and broken pipes were not fixed, but offenders still had to live in that condition for months at a time.

4. The facility has many Roof Top Units (RTU)'s that are not working at all times. In the summer, cooling is not done. In winter, there is no available heat for months at a time.

5. Plaintiff Lanari was housed in Unit 4-C pod, cell 6305, in 2021. According to ACCU Weather, the temperatures in Olney Springs in May of 2021 were more than 85 degrees as a daily high for 9 days. On June 23, 2021, the daily high temperature was 106 degrees. There were

20 days that the daily high temperature was over 85 degrees. It was over 100 degrees, 21 different times in July and August of 2021 in Olney Springs.

6. The RTU for half of the building in Unit 4-C, where Plaintiff Lanari 's cell was located, cell 6305, was not working for over 7 weeks. Short of fixing the cooling system, there existed no alternative for offenders to escape the high cell temperatures. Each time help was requested to get the problem fixed, no help was given. On 7/7/21, Plaintiff Lanari wrote Defendant Goodrich and explained how many maintenance problems were continuing to occur in Unit 4 - C. This lead to Warden Goodrich's attempt to move him out of the facility by reclassifying Plaintiff to a higher security status. This is one form of retaliation used by staff to stop Plaintiff from resolving internal, facility level issues. It was not Defendant Goodrich's intention to "transfer" Plaintiff to a different Living Unit that did not have maintenance issues. He wanted to have Plaintiff Lanari moved, "transferred" out of (CCCF) to get rid of the problem, Plaintiff Lanari.

7. Plaintiff Lanari maintains all the records of his interactions with the various staff members and the documents they created when they followed Warden Goodrich's orders to negatively change Plaintiff Lanari's security classification.

8. It took many months to restore Plaintiff Lanari's security classification back to the Minimum Restrictive status. Because of the actions of Defendant Goodrich, Plaintiff Lanari was taken off the move list that would send him to a less restrictive facility. The harm created did not end there, though. Defendant Goodrich did not repair Unit 4 -C after Plaintiff was moved out, and to this day, that Living Unit still has severe maintenance issues.

9. Finally, on 8/4/21, Plaintiff Lanari was moved out of Unit 4 - C, cell 6305 and housed in Unit 3-A, cell 5116, in the Incentive Living Unit. But, as Plaintiff Lanari would find out later,

this new cell had it's own list of problems, and other Living Units throughout (CCCF) had the same broken infrastructure, no staff and no parts purchased to fix the maintenance issues.

10. Plaintiff Lanari was housed in a cell that was on the North facing wall in Unit 3-A, cell 5116 in October of 2021. Again, according to ACCU Weather, the average daily temperature was 58 degrees. But, this temperature data is skewed due to using daytime temperature along with night time to average a temperature in a cell. Offenders were locked in their cells at night and early mornings which shows colder temperatures due to the heat of the day sunshine. Thus, the actual cell temperatures from 9:00 PM - 5:00 PM are much colder than the average daily temperatures recorded by ACCU Weather.

11. Plaintiff Lanari and others at (CCCF) requested any alternative to try to keep warm. They requested that the heating unit be fixed, that they could receive additional blankets, or cold weather clothing should be provided. The staff continued to say that it was going to be fixed, but the offender workers said that the parts were never ordered. The Colorado Canteen services for purchasing additional blankets or warm clothing by offenders, were shut down, still due to Covid restrictions.

12. On 11/23/21, staff members, Life/Safety Officer Taylor, Capt. Smotherman and Unit Manager Lovato, were doing a life/safety check in Unit 3 -A. Plaintiff Lanari asked Ms. Taylor to step into his cell to understand the temperature of the cell. She said that it was cold and then asked Unit Manager Lovato if we could receive extra blankets. Unit Manager Lovato told her that they were aware of the problem and that they were working on it.

13. Plaintiff Lanari asked Unit Manager Lovato when he thought it would be fixed and he did not know. Lovato became aggravated and said that Plaintiff Lanari was embarrassing him in front of the other staff with his questions. He tried to lock Plaintiff Lanari back into cell 5116,

by closing the cell door even though count was clear and all offenders were about to go to evening chow hall.

14. As he was leaving, Brian Lovato stated to Plaintiff Lanari, "You are not Incentive Unit material" and "I will move you if you give me any more problems about this heat issue." According to ACCU Weather, the skewed daily average temperature in November of 2021 was 48 degrees. Again, the actual cell temperatures from 9:00 PM - 5:00 PM are much colder.

15. Plaintiff Lanari suffered harm with daily nose bleeds due to the cold conditions in his new cell 5116, in Unit 3 - A. He had to declare a Medical Emergency on 10/18/21 because his nose had been bleeding for 5 hours. Plaintiff Lanari was charged $3.00 for the Medical Emergency as seen in the November of 2021, Statement of Account Activity

16. Finally, since all attempts to resolve the maintenance issues failed, on 11/25/21, Plaintiff Lanari filed an Informal Grievance to the Maintenance Department. Since it was winter in Colorado, Plaintiff believed that the for profit prison could at least provide to get the heat fixed. Plaintiff Lanari was suffering daily nose bleeds due to the cold cell conditions. He was seen by medical staff on three separate occasions from October through January of 2022.

17. When there was no answer to the Informal Grievance, Plaintiff Lanari filed a Step I Grievance on 12/20/21, to Maintenance Supervisor David Young.

18. In December of 2021, it got colder and there was no heat provided, no repairs made to the RTU, no answer to grievances, or for the request for additional blankets. Again, according to ACCU Weather, the skewed average daily temperature was approximately 42 degrees for all of December 2021. The cell temperature in 5116 was below that average at 9:00pm to 5:00am.

19. Plaintiff Lanari continued to seek medical help by asking them to intercede. He asked Medical to request blankets for all offenders similarly situated throughout the facility. He spoke

with, or sent offender kites to all staff up and down the chain of command. Plaintiff Lanari spoke with Warden Goodrich and asked about the used blankets that could be provided from Unit 5 because that Unit had been closed down. Warden Goodrich said that those blankets had been repurposed. Plaintiff Lanari investigated that claim by speaking with the intake staff and found that other offenders, as they entered the facility for the first time, were given (1) blanket and (1) sheet upon their new arrival status. The Warden joked that it was a supply issue because the container ships inventory were not being delivered to the facility.

20. On January 1, 2022, the outside temperature was 4 below zero and on January 2, 2022, the outside temperature was 9 below zero, according to ACCU Weather for Olney Springs, Colorado. Plaintiff Lanari still had no heat, no extra blankets, no staff taking temperature checks and no alternative actions by staff to alleviate the cold cells. The average daily temperature was 33 degrees from 1/1/22 until 1/19/22, according to ACCU Weather for Olney Springs, Colorado.

21. On 1/10/22, Unit Manager Lovato answered the Step I Grievance from Plaintiff Lanari concerning maintenance issues, specifically the heat not working. Lovato states in his response that the heat is fixed. He lied. The part for the heating unit came in on 1/18/22 and the RTU was finally fixed on 1/19/22. Mr. Young never answered any grievances.

22. On 1/17/22 Plaintiff filed a Step II Grievance because the heat no the other issues with ventilation had been repaired. As it was so cold outside, the north facing cells took another week to warm up. On 1/27/22 Plaintiff Lanari had his last recorded nosebleed due to the cold. During the months of cold, staff never recorded these conditions, nor did they attempt any fixes to other problem of ventilation for the exhaust or broken pipes throughout the facility.

23. On 4/7/22, after the winter months were behind us, Paul Pacheco responded to the Step II Grievance in an out of time response in which he lied about the vent working.

24. On 4/12/22 Plaintiff Lanari filed the Step III Grievance that explained all the threats and that the (CCCF) infrastructure was still in bad repair.

25. On 5/9/22 (CDOC) official denied the Step III Grievance stating that Plaintiff did not complete the process properly.

26. The (CDOC) response never addressed the issues at hand of broken infrastructure at (CCCF). Their response focuses on a concept that somehow only one issue must be presented at a time. They state that all of the steps of the grievance process must use the same language, to focus on that one concept. Plaintiff believes that broken infrastructure is one concept. The Colorado official did not address the issue that having a cell that has heat during the winter in Colorado is important. By reviewing the response by the (CDOC) official it is clear that even the basic need for a cell that had heat was ignored by the (CCCF) Defendants and the (CDOC).

**Claim #2 : Conditions of Confinement - Administrative Operations; Mail Room**

**CCCF Mail Room Staff Do Not Follow (CDOC) Policy and Procedures as Per Established Guidelines**

1. The guidelines for delivery of Non-Restricted mail as well as Incoming Restricted Inspection Mail are shown as policy of the (CDOC), "to allow offenders under its jurisdiction to correspond with family, friends, courts, legal counsel, and other public/private entities, as appropriate."

2. The processing and delivery time frame for mail delivery is shown at, IV. PROCEDURES, A. General Guidelines, 9. that states in part, "*Excluding weekends, holidays, and/or emergency situations, incoming and outgoing mail is held for no more than 48 hours and packages are held for no more than 72 hours.*"

3. Plaintiff Lanari and other similarly situated offenders at (CCCF) routinely have non-restrictive mail that is either thrown away by staff, or delivered weeks and even months after it

was postmarked. After (CCCF) unit staff retrieve the daily mail from the Mail Room, they sort it. On at least 10 separate occasions, Plaintiff Lanari has received another offenders mail delivered to his cell or had another offender bring Plaintiff Lanari's mail to him in error.

4. Specifically, on April 13, 2022, Plaintiff Lanari went to the Mail room for his scheduled appointment to receive incoming restricted inspection mail (legal mail). Mr. Sanchez showed Plaintiff Lanari an envelope dated 12/17/21. This envelope had a picture of Plaintiff Lanari' older sisters house that was decorated for Christmas 2021. Mr. Sanchez then asked, " Would you like a black and white copy of both items?" and Plaintiff Lanari responded, "Yes".

5. Plaintiff Lanari never received the picture so he sent an Offender Request to the mail room inquiring about it. The request was answered, stating, "If the photo was brought to our attention it would have been sent to your unit for distribution." As of the date of this Complaint, Plaintiff Lanari has never received that picture from his sister. Subsequent conversations with Mr. Sanchez have not been successful. Mr. Sanchez does not remember any prior conversations with Plaintiff Lanari.

6. In March of 2022, Ms. Owens was in the Unit 3 Control Center, She called Plaintiff Lanari over the facility intercom. She said, "sorry, sorry, sorry, I'm so sorry about this." She then dropped Christmas letters down to Plaintiff Lanari. These letter were postmarked, 12/4/21 and 12/5/21. Ms. Owens explained that she found the letters mixed in with old facility count sheets. Such is the professional delivery of non-restricted mail at (CCCF).

7. After filing his complaint in the Crowley County District Court against (CCCF) Defendant's, Plaintiff Lanari has had problems receiving legal mail. On 5/27/22, Plaintiff was given an appointment slip for legal mail to be received on 5/31/22. Unit staff Ms. Parra collected the non-restricted mail at approximately 1:00PM on 5/27/22. She then delivered the appointment slip, to

the Plaintiff at approximately 5:30PM on 5/27/22. This means that the Mail Room staff had time to receive, sort and create appointment slip before Ms. Parra showed up to receive the mail. But, the same staff did not have time to develop any plan for the alternate means of delivery of the incoming restricted inspection mail (legal mail), even though the staff knew it was the Friday before Memorial Day weekend.

9. Pursuant to (AR) #300-38, all incoming restricted inspection mail (legal mail) is to be delivered to the offender within a stated time period. But, the logistical process done at (CCCF) and the log book state the impossible. The (CCCF) Mail Room staff create a log that shows that they receive the (legal mail) on the same day as the offender received it. It is impossible, logistically, because (CCCF) staff have to go through several steps to complete this process before the (legal mail) is delivered to the offender.

10. The (legal mail) comes into the facility from an outside source. It is sorted by offender name, number, Cell House, Pod and cell number. A log book for each cell house is created to keep the log book signature pages separate for each offender. Appointment slips are generated for each offender and placed into the non-restricted mail bag. Each living unit sends a staff member to retrieve the mail bag. The unit staff then sort out all the mail by pod, A, B, or C pod and cell number. The appointment slips are delivered, hopefully to the correct cell, to the correct offender. If the general mail is delivered on a Friday or if a Holiday is on a Monday of the following week, the actual appointment slips for the incoming restricted inspection mail (legal mail) can take more than 5 days from delivery to the (CCCF) Mail Room to the offender on his designated appointment date. So, when the (CCCF) log book has the same date received by staff as the date received by the offender, it is a logistical impossibility. The (legal mail) delivery by (CCCF) staff is not in accord with (AR) #300-38.

11. Pursuant to (CDOC) policy, all legal mail is to be delivered within 48 hours after it is received by mail room staff. In the week preceding the above mentioned incident, legal mail was still delivered by unit staff to offenders, even though the facility was completing a "green bag compliance", a facility lock down, on 5/24/22 and 5/25/22. This incoming restricted inspection mail (legal mail), was brought to each living unit by staff where it was opened in front of each offender and the delivery was done in a timely manner. Somehow the legal mail that arrived on 5/26/22 could not be delivered until 5/31/22. This non delivery of offender legal mail results in "actual injury" by frustrating, impeding or hindering the efforts of offenders to pursue a legal non-frivolous claim in the Court.

12. The problems of relying on ones captors to process legal mail that is being filed against them is difficult to overcome. On at least three separate, documented incidents, Plaintiff Lanari's legal mail was opened outside his presence, copied and then delivered a week after the (CCCF) Mail Room staff received it. There is no legitimate Pena logical interest by (CCCF) staff that they can explain to this Court, that allows them to ignore clearly established (CDOC) policies. (CCCF) staff have invaded Plaintiff's privacy and then given their coworkers an unfair advantage when they delay the delivery of time sensitive legal documents of the Plaintiff's. This (CCCF) policy is clearly actionable in a 42 USCA §1983 action.

13. On 5/31/22 at approximately 8:15AM, Plaintiff Lanari went to his scheduled Mail Room appointment to receive their legal mail. Ms. Walters, the Mail Room Supervisor was running the walk up window. She required Plaintiff to sign a falsified (AR) Form 300-38B, Incoming Restricted Inspection Mail Log, before he could receive his legal mail. This form listed the "Date Received" as 5/31/22, and not the correct "Date Received" of 5/26/22, when those documents actually were received by (CCCF) Mail Room staff.

14. Before signing the form, Plaintiff Lanari stated to Ms. Walters, "This is not the date that this legal mail came in" and that, "you need to change the date to 5/26/22." Ms. Walters replied that, "We are within the timeframe to deliver your legal mail by procedure." "Would you like to see the (AR) on this?" Plaintiff Lanari explained that he was aware of (AR) #300-38 and disagreed with her interpretation of the time limits, but still requested that she change the "Date Received" on the form. Ms. Walters said that she was not going to do that. Plaintiff Lanari was required to sign the falsified legal mail log in order to receive his documents.

15. On 5/31/22, after receiving his untimely delivered legal mail, Plaintiff Lanari hand delivered a complimentary copy of an Informal Grievance to Ms. Walters. This Informal Grievance contained a request to deliver incoming restricted inspection mail as per (AR) #300-38 and to stop the untimely delivery of this offender legal mail in the future.

16. Plaintiff Lanari requests a copy of the envelope that legal mail is delivered in each and every time. This is the policy for incoming restricted inspection mail. In this way, offenders are able to ascertain the date in which their legal mail was sent out to them. Somehow, the dates of the postmarks are either missing or not legible in many of the copies of the outside of the envelope copied by (CCCF) Mail Room staff. The internal documents often reflect dates on them. These dates on the Court letterhead, for example, are often 7 - 10 days earlier than the date when Plaintiff's receive their restricted incoming inspection mail, (legal mail).

17. After retuning to his living unit on 5/31/22, Plaintiff Lanari began documenting all events to record for this future Complaint. He believed that the Informal Grievance against the Mail Room would follow the familiar pattern at (CCCF). It would be ignored, lost or denied by (CCCF) staff. So, he began the rough draft of a Step I Grievance. At approximately 10:15AM, while Plaintiff Lanari was still locked in his cell awaiting the facility count to clear, Case Manager Teneff, a Defendant in the Crowley County District Court, Case No. 2022CV3, delivered an

additional copy of the same document Plaintiff Lanari had just received from his legal mail appointment at 8:15AM, on 5/31/22. Once again, the facility staff screwed up. The (CCCF) Mail Room staff had given a (CCCF) Defendant, George Teneff, a copy of Plaintiff Lanari's incoming restricted inspection mail, (legal mail), and had Defendant Teneff deliver it as non-restricted mail, to Plaintiff Lanari. It is impossible to make this stuff up. This private prison and their staff are really dysfunctional.

18. Plaintiff Lanari asked Defendant Teneff, about the legal document he slid under the locked door. He asked him, "Doesn't this look like restricted legal mail to you?" and that, "I believe that as a Defendant to this Complaint, you are getting an unfair advantage by receiving my legal mail." Defendant Teneff replied, "I don't know if this is or not?", as he held the Summons and Affidavits of other Defendant's from Case No. 2022CV3 in his hands.

19. Defendant Teneff also had a copy of Plaintiff Lanari's Informal Grievance. He stated, "I've got your Informal." Meaning the Informal Grievance Case Manager Aragon logged for Plaintiff Lanari at approximately 7:15Am, on 5/31/22. Plaintiff Lanari asked, "How did you get it so fast?" Defendant Teneff said, "She logged it and sent me an E-Mail" "It was in my in box."

20. Defendant Teneff then told Plaintiff Lanari, "You might as well get the Step I done, because I never get any informals back." Plaintiff Lanari completed a rough draft and then had Ms. Aragon make a copy and then log the Step I Grievance to Defendant Teneff.

21. Ms. Aragon is the Case Manager that has an office in Unit 3 - A, where Plaintiff Lanari is currently housed in the Incentive Living Unit. She is not Plaintiff Lanari's assigned Case Manager. George Teneff is Plaintiff Lanari's assigned Case Manager. But, Plaintiff Lanari risks a disciplinary report for being out of area, if and when he would visit his assigned Case Manager. George Teneff has an office in Unit 4-A, which is unavailable for Plaintiff Lanari to visit him.

This is yet another way that the (CCCF) staff attempt to hinder access to the grievance process. The process of filing a grievance to exhaust remedies is exhausting, in of itself.

22. On 8/24/22, Plaintiff Lanari received the denial of his Step II Grievance for Mail Room issues. Many other offenders at (CCCF) do not take the time to document or file their issues with Mail Room staff for fear of retaliation.

23. On 8/29/22 Plaintiff Lanari filed the Step III grievance and it was denied by a (CDOC) official on 10/5/22. The (CDOC) official once again said that this grievance was "Not exhausted." , because, "This remedy is not available." Plaintiff Lanari asked for the problems to be corrected by retraining or restaffing the Mail Room and to follow the correct procedures of (AR) #300-38, to no avail. Once again, a justicable controversy created. The Courts say that Plaintiff must exhaust all remedies and the (CDOC) says the remedy is not allowed or available.

**Claim #3 : Conditions of Confinement - Administrative Operations; Case Management**

**Private prison offenders receive unequal Case Management treatment compared to similarly situated offenders in Colorado State prisons.**

1. Plaintiff believes that the most important department in any prison setting is the Case Management Department. Case Managers establish all facets of an offenders daily, monthly, and yearly life. If they are properly trained and motivated, their knowledge and help is invaluable to an offenders programming needs. If one wants to work, have an education, or be placed into a specific Living Unit, Case Managers are necessary to complete these functions. By keeping an offender on the right track, Case Managers can help offenders to be released to parole or to complete their prison sentence as early as legally possible. When laws change, Case Managers that continue to learn and train, are better prepared to help their clients/offenders if they make themselves aware of the updated changes in the law. But, at (CCCF), Plaintiff believes that the

private prison Case Managers do not keep themselves updated because they are relegated to working in other staffing areas and simply do not have time to review laws and thus help the offenders on their case loads. They work in other areas, because of staff shortages at (CCCF).

2. Case Managers at (CCCF) do not have the authority to help offenders with their programming and educational needs. Due to the lack of accredited programs at (CCCF), offenders cannot complete required programs and educational classes. They must wait to be transferred to a State run facility to receive achievement earned time credits. This lack of accreditation shows why Case Managers at (CCCF) do not record positive accomplishments or milestone events in an offenders working file to help reduce the offenders sentence by granting good time, earned time or achievement earned time that can reduce an offenders parole eligibility date (PED).

3. Since the Case Managers at (CCCF) are private contractors, they are unable to access the (CDOC) Case Management system. Without this access, offenders at a private prison setting do not receive the logistical support they need for verification of their compliance with the conditions of their sentence as per (CDOC) guidelines. They are not as well prepared for their eventual release as the State run facility offenders. Offenders at (CCCF) are warehoused and are not offered the same opportunities to improve themselves as offenders in state run facilities. The Program matrix shows many more opportunities for State run offenders than private prison offenders. **(See, https://cdoc.colorado.gov/resourses/case-management)**

4. Plaintiff Lanari and others similarly situated, have been denied earned time toward their Parole Eligibility Date (PED) because private prison Case Managers lack the statutory authority to correct errors made in the calculation of the sentences of their clients. Specifically, Plaintiff Lanari 's Case Manager George Teneff, cannot access the (CDOC) system because as a private contractor he is locked out of the (CDOC) computer system. The change of sentencing laws for Plaintiff Lanari's case regarding earned time and the one continuous sentence calculation was

changed in 2016, but a backlog of over 2,700 offender cases has denied correction of calculations for many offenders. Since George Teneff is locked out of the (CDOC) computer network, Plaintiff Lanari was forced to exhaust all remedies, including using the established grievance procedure to be able to make his argument of why he should be seen by the Colorado Adult Board of Parole in a timely manner.

5. Plaintiff Lanari's grievance against Case Management was denied, so he filed a Rule 106(a)(2) motion in the Crowley County District Court, Case No. 2022CV3, on January 27, 2022, to get his prison sentence recalculated for his parole eligibility date (PED).

6. Before the (CCCF) Defendants received their summons, Warden Barry Goodrich, a Defendant in this instant case, received a copy of Plaintiff Lanari's complaint. Then the Attorney of Record, Hall and Evans, filed a motion to Dismiss the (CCCF) Defendants on 5/3/22.

7. Plaintiff Lanari filed a Motion In Opposition To Dismiss (CCCF) Defendants based upon the fact that they had not yet received their summons, thus the case was not yet ripe for review of the Motion To Dismiss on 5/20/22.

8. On May 25, 2022, (CCCF) Defendants were served their summons by the Crowley County Sheriff. The attorney of Record, Hall and Evans, filed a second Motion To Dismiss the (CCCF) Defendants on June 21, 2022 and the Crowley County District Court Judge granted their motion on June 27, 2022, citing that, "they do not have responsibility regarding Plaintiffs time computation, sentence determination or parole eligibility and that such authority lies with the Colorado Department of Corrections."

9. The (CCCF) Defendants receive an unfair advantage in Court. They delayed delivery of time sensitive legal mail (the second Motion To Dismiss) for 12 days. Then they denied Plaintiff Lanari access to the Law Library because there was no back up staff when Ms. Harrison was on

vacation for 2 weeks from June 12, 2022 through June 22, 2022. Program Supervisor, Mr. Biggers, opened the Law Library for one day for East Side Plaintiffs on June 23, 2022, for 2 hours. When Ms. Harrison returned from her vacation, (CCCF) had a "West Side facility compliance check" that closed the law library for the third week in a row, because she had to help with the "compliance check." The law library was again closed from June 25, 2022 through July 6, 2022. These closures coincided with the time frame that would have allowed Plaintiff Lanari to oppose the second (CCCF) Motion To Dismiss from the (CCCF) Defendants. Again, due to staffing issues, Plaintiff Lanari, and other similarly situated offenders at (CCCF) were denied access to the Court.

10. Offenders at (CCCF) need specific State monitors to regulate (CCCF) Case Management functions to ensure that Colorado offenders are able to complete their prison sentences as early as legally possible, be transferred to the lowest appropriate custody levels when their classification is verified by CDOC officials and to make sure that all offenders records are prepared properly when they meet the Parole Board, as per established (AR) guidelines for Colorado offenders. **(See, AR # 950-07 - Sentence Computation)**

11. Plaintiff Lanari believes that, the (CDOC) should create specific monitors, (PPMU) for oversight of for profit prison Case Management in house at each facility or install official (CDOC) Case Managers, instead. Plaintiff Lanari and others have sent Inmate Requests (Kites) to the (CCCF) (PPMU) and have not received any responses.

12. On 8/9/22 Plaintiff Lanari filed another motion in the Crowley County District Court. This was in response to the (CDOC)'s Motion To Dismiss the (CDOC) Defendants. He sent the motion through the Law Library by logging the addresses for both the Crowley County District Court and the Attorney General of Colorado by Priority Mail. The envelope to the Crowley County District Court was delivered, but the Attorney Generals copy was deemed undeliverable

by the USPS. Plaintiff Lanari received the undeliverable envelope back after 14 days on 8/23/22. Further research continues as to who altered the zip code to make the envelope undeliverable. On 8/25/22, Plaintiff Lanari spoke to the Mail Room, Capt. Chapell, Capt. Markt and Ms. Harrison. These staff said it was not their fault that the address was altered, but they are looking into the problem.

13. None the less, Plaintiff Lanari files this claim to explain that the functions of Case Managers at (CCCF) are not sustainable for Colorado offenders. Plaintiff Lanari and other similarly situated offenders at (CCCF) do not receive the same treatment as offenders in the State run facilities, and as such, need this Court to correct this.

14. Records are not maintained or not entered into the system that allow offenders at (CCCF) to receive achievement earned time. Plaintiff Lanari completed a Paralegal Course at the Adams State University and the 30 - 60 days of achievement earned time was not credited against his eventual (PED). Other Plaintiffs have completed their GED classes that should grant them 45 days of achievement earned time and they have not received it.

15. When Plaintiff Lanari received the results of his reclassification on 8/25/22, the time toward his PED increased from 4/10/2028 to 6/01/2031. Defendants have not followed the clearly defined Colorado Revised Statutes (CRS) or current Colorado case law.

16. Plaintiff Lanari and others have been on a waiting list to be transferred to a lower custody level facility, but since the (CCCF) Case Managers are not State officials the (CDOC) officials do not respond to their E-Mails because they won't open any attachments sent by (CCCF) due to a possible virus toward the (CDOC) computer system.

17. On April 4, 2022, Leroy Fief, an offender at (CCCF), sent a letter to Colorado Minimum Centers (CMC) for the Four Mile Correctional Facility. His letter was a request for transfer from

(CCCF) so that he could work at the Heavy Equipment Department at Four Mile. Since his classification will be at Minimum Restrictive (MR) in October of 2022, he wanted to plan ahead. Case Manager, George Teneff (CCCF), received a letter dated August 4, 2022, from Four Mile stating that since Mr. Fief was not currently listed as (MR) status, he would not be transferred immediately. Case Manager Teneff waited until August 25, 2022, to give Mr. Fief the letter. As stated earlier, if Case Managers at (CCCF) were (CDOC) Case Managers, they would be able to correspond via the (CDOC) system to disseminate their offenders information better and in a timely manner. Without that option, private prison offenders are not treated the same way as offenders at State run facilities. Mr. Fief gave Lanari permission to give the Court this information.

18. Andrew Turner is an offender housed at (CCCF). His Case Manager, Ms. Portella, did not prepare his paperwork for the Colorado Division For Adult Parole properly. She did not explain to Mr. Turner that he was required to take programming for substance abuse before the Parole Board would make a positive recommendation for his release. Mr. Turner's file was not updated to show non-compliance with programming needs required by the (CDOC) to make parole. Mr. Turner received a 1 year set back to see the Parole Board, even though his criminal sentence will be completed in October of 2024. Mr. Turner is not treated the same as an offender at a State run facility because he cannot take the Substance Abuse Program at (CCCF) that the Parole Board requires because that program is not offered at (CCCF). Mr. Turner gave Lanari permission to give the Court this information.

19. Chad Aragon is a Colorado State offender housed at (CCCF). Mr. Stewart is his Case Manager. Mr. Aragon was given a 1 year set back by the Parole Board, due to programming needs not offered at (CCCF). Since December of 2021, Mr. Aragon's classification is listed at Minimum. Yet, he remains at the Medium Custody Level facility, (CCCF). Due to a lack of

training and the inability of his (CCCF) Case Manager to access the (CDOC) Case Management system, Chad Aragon's' security classification has a double negative rating against him. This double negative rating is contrary to established Colorado (AR) guidelines. Mr. Aragon's' criminal sentence will be discharged in October of 2023, but once again, due to the logistics of correspondence between the (CCCF) and (CDOC) Case Management computer system, Mr. Aragon is warehoused at (CCCF). Mr. Aragon gave Lanari permission to give the Court this information. **(See, AR # 950-07 - Sentence Computation)**

20. Before Plaintiff Lanari filed any grievances or motions to the Crowley County District Court, he wrote letters and Inmate Requests for Interviews to the (CCCF) Defendants and (CDOC) Defendants to correct his sentence calculation toward his (PED). He was trying to receive an "Official Time Computation" that was updated, because the only available document was from 4/18/2011. Plaintiff Lanari believes he has both a Colorado State and a Federal right to have a (PED) determination. One of the requests was sent to Lt. Heisch on 4/29/21. She said that with the Covid health emergency, she would revisit the issue later. She never followed up.

21. On 5/5/21, Plaintiff Lanari wrote case Manager II, Mr. Guerrero, to correct his reclassification, because Plaintiff Lanari's Case Manager Arellano had resigned. Plaintiff Lanari was informed that his new Case Manager was now George Teneff. So, on 6/3/21, Plaintiff Lanari wrote him asking for an "Official Time Computation", an audit, because the classification and (PED) were incorrect according to the current Colorado case law.

22. On 7/7/21, Plaintiff Lanari sent a Offender Request Form to Warder Goodrich about the maintenance problems in Unit 4-C where Plaintiff lived at that time. This paragraph will make sense later, as it set the mood for Mr. Goodrich to retaliate against Plaintiff Lanari.

23. On 7/8/21, Case Manager Encinitas completed a "Discretionary Reclassification" that changed Plaintiff Lanari's classification to a higher level. It was changed from Minimum Restrictive to medium. Mr. Encinias told Plaintiff Lanari that the head of (CCCF) Case Management, Mr. Tenorio, was told by Warden Goodrich to make the change to enable Plaintiff Lanari to be moved out of the facility.

24. After meeting with Case Managers Tenorio, Encinias, and Guerrero, Case Manager Teneff corrected Plaintiff Lanari's classification by completing a second "Discretionary Reclassification on 8/25/21. Plaintiff Lanari's classification status was now back to (MR).

25. On 9/24/21, Plaintiff Lanari filed an Informal Grievance because the (CCCF) Case Management Department could still not provide an "Official Time Audit". Plaintiff Lanari continued to follow the grievance procedures to the end stage, but never received any "Official Time Audit" or any corrections made for his criminal sentence or his corrected (PED).

26. Throughout the timeframes, Plaintiff Lanari tried to exhaust all remedies by writing letters to (CDOC) officials. On 10/20/21, he wrote to both Jennifer Murphy, Time/Release Supervisor and to the Program Oversight Committee, to correct his sentence. On 10/22/21, Plaintiff Lanari wrote to the Department of Education, and Clinical Services, all to informally receive documents to correct the achievement earned time credits he had earned toward his (PED).

27. On 10/30/21, Plaintiff Lanari sent a letter to the Executive Director of the Colorado Department of Corrections, Dean Williams, requesting an "Official Time Audit", to correct his sentence and a request to restore lost good time credits. Dean Williams never responded.

28. On 11/8/21, Nicole Allen, MPS Coordinator, sent an E-Mail to Lanari's case Manager Mr. Teneff. She was responding to a letter written by Plaintiff Lanari on 10/20/21. She said that, "all college courses taken by Plaintiff Lanari were before 2012 and no achievement earned time could be granted to him.

29. Plaintiff Lanari timely responded to all the established time frames as the steps of the grievance process were being completed by him. But, the (CCCF) Defendants responses were always past the time allowed. **(See, AR # 850-04 - Grievance Procedure)**

30. On 2/3/22, Defendant Paul Pacheco, denied Plaintiff Lanari's Step II Grievance in an out of time response stating, "there have been no changes to your case."

31. Correspondence to and from (CCCF) officials and Plaintiff Lanari does not always follow a chronological time line. The delivery of letters or E-Mails responding to letters from Plaintiff Lanari are delayed. While Defendant Pacheco was already denying Plaintiff Lanari's Step II Grievance on 2/3/22, the (CDOC) official, Jeannie Lira, Program Assistant I, Private Prison Monitoring Unit (PPMU), sent an E-Mail to Plaintiff Lanari's Case Manager, George Teneff, on 2/2/22. Plaintiff Lanari was required to follow the procedures for the grievance process and had already completed his Step II Grievance, before any answer was completed for the Step I response from (CCCF) Defendants, because they were already out of time. Had Plaintiff Lanari not completed the Step II Grievance, he would have been denied the right to file a Step II, because they would state that Lanari was out of time. **(See, AR # 850-04 - Grievance Procedure)**

32. Again, because of the possibility of being time barred, Plaintiff Lanari had already filed a CRCP Rule 106(a)(2) in the Crowley County District Court on 1/27/22. So, when he finally received out of time grievance responses from both the Step II, and Step III Grievances, in February of 2022, his case was already being reviewed in Crowley County District Court. The E-Mail from (CDOC) official Jeannie Lira of 2/2/22 was given to Plaintiff Lanari on 2/9/22. It stated in part, "We have received offender Lanari 56258 letter at the Office of Time and Release Operations and appreciate him reaching out to resolve his concerns." "Although Time and Release Operations handles finalization of and computation of time." "We feel offender Lanari

56258 concerns can be best addressed at a facility level." "Please advise the offender of the grievance process."

33. On 2/9/22, Plaintiff Lanari responded to Jeannie Liras E-Mail explaining to her in a letter, that since the (CCCF) Defendants are private contractors, they must follow the Colorado Revised Statutes. Specifically, C.R.S. § 17-1-203 - *Powers and duties not delegable to contractor: which states in part, (d) Make a decision to award, deny, or forfeit earned time."* Plaintiff Lanari also requested that Jeannie Lira review (AR) # 950-07, under Sentence Computation, so that Plaintiff Lanari's sentence would be recalculated by a Colorado official that can make a final determination, not by a private contractor that is not allowed to do so by statute. Ms. Lira has not responded to Plaintiffs last letter.

34. Plaintiff Lanari received an out of time denial of his Step III Grievance from (CDOC) official Anthony Decesaro on 2/22/22. Mr. Decesaro states in part, "Time computation is not a grievable matter." "Because this is not a valid method for review of your issue, you have not exhausted your administrative remedies." "This is the final administrative action in this matter." Another mixed message sent by (CDOC) officials shown above when Plaintiff Lanari tries to exhaust administrative remedied before a Court action.

35. Plaintiff Lanari requests that this Court review (AR) # 850-04 and Colorado case law that does allow for a review of time computation. By reviewing this information, Plaintiff Lanari believes while attempting to exhaust all remedies, the actions of (CDOC) officials create a justicable controversy as explained in, ***Nowak v. Suthers, 320 P. 3d 340.***

36. Plaintiff Lanari has calculated his sentence and parole eligibility dates based upon the date of his crime and the current changes to Colorado case law. There exist two scenarios, both of which express a much shorter (PED) date than the (CDOC) date of 6/1/2031. Plaintiff Lanari believes his (PED) is either 9/13/2021, which is past due, or it is 9/13/2025. In either scenario,

while he is still housed at (CCCF), the private contractor cannot make a final determination on any Colorado offenders sentence calculation. So, it is required that (CDOC) officials must be the ones to recalculate Plaintiff Lanari's and other similarly situated offenders sentences, so that their sentences comply with both the Colorado and Federal law.

37. Plaintiff Lanari other similarly situated offenders at (CCCF) believe that a ruling in this instant case by this Court will create a new eligibility review by Colorado officials, which may speed consideration of a new parole application, due to the sentence recalculation of all offenders housed at (CCCF). A ruling by this Court, to require a recalculation of prison sentences would also allow (CCCF) offenders to be transferred to the lower rated custody levels at State run facilities. It would enable these (CCCF) offenders to take necessary programming and educational classes that are required by future parole boards and stop the catch 22 process currently in place, at private prisons. In order to be paroled, offenders must complete programs and educational classes, but the private prisons do not offer the programs and educational classes that Colorado offenders need to meet the requirements of the Parole Board.

**V. Injuries:**

1. Plaintiff Lanari, and other similarly situated Colorado State offenders housed at (CCCF) have had the following injuries:

a. bodily injury

b. continual injury

c. continuing injury

d. direct injury

e. injury in fact

f. legal injury

g. malicious injury

h. pecuniary injury

i. personal injury

j. public injury

k. reparable injury

l. serious bodily injury; and

m. temporary injury

**VI. Relief**

1. Plaintiff incorporates and re-alleges all preceding paragraphs.

2. Based on the foregoing, Plaintiff respectfully requests the following relief:

a. awarding injunctive relief enjoining Defendants from destroying all records from Medical, Maintenance, Mail Room, Grievance Coordinator, and other similar data concerning this instant complaint.

b. awarding all actual, compensatory, consequential, special, treble, statutory and/or punitive damages suffered by Plaintiff with respect to each and every cause of action asserted herein; and

c. awarding all costs, expenses, and reasonable paralegal and attorney fees incurred by Plaintiff in investigating, readying, bringing, and prosecuting each and every cause of action asserted herein; and

d. any additional relief the Court deems warranted under the circumstances.

**VII. Exhaustion of Administrative Remedies Administrative Procedures**

**A.** Plaintiffs' claims arose while confined at the Crowley County Correctional Facility (CCCF).

**B.** The grievance procedure for this private prison is shown by he Colorado Department of Corrections (CDOC) Administrative Regulation (AR) #850-04.

**C.** All of the claims for relief in this complaint are covered through the grievance process at this facility. Plaintiffs' grievances have been attempted to be resolved informally through letters and verbal conversations, to no avail.

**D.** The Plaintiff and other offenders filed grievances that concerned facts to be addressed in this complaint.

**E.** 1. Yes, grievances were filed at the Crowley County Correctional Facility.

**VIII. Previous Lawsuits**

Plaintiff Lanari has never had any case dismissed based on the "three strikes rule" in a civil action or an appeal in federal court.

**A.** Plaintiff Lanari as prior mentioned in this complaint, has a case dealing with some of the same facts in Crowley Combined Court that are the same as this action, but the issues for Claim #3 regarding his sentence calculation toward his Parole Eligibility Date (PED) are not yet resolved in the Crowley County District Court Case No. 2022CV3, as of the date of this instant motion.

**IX. Certification and Closing**

**A. For Parties Without an Attorney**

**A. For Parties Without an Attorney:**

1. At an early practicable time, the pro se Plaintiff requests this Court to certify this Prisoner Complaint concerning conditions of confinement at the Crowley County Correctional Facility as a class action, pursuant to the Federal Rules of Civil Procedure, Rule 23, because the class is so

numerous with questions of law or fact common to the class, that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

2. Additionally, and finally, the Plaintiff requests this Court to appoint class counsel as soon as practicable to supplement or correct any errors or omissions by the Plaintiff due to his inexperience with handling class actions, other complex litigation and the types of claims asserted in the action before this Court.

**WHEREFORE,** Plaintiff Robert Bradley Lanari, pro se, prays this Court will grant all the above-listed claims and the relief for damages in the Complaint for conditions of confinement at (CCCF). Pursuant to 28 USCA §1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Robert Bradley Lanari

Robert Bradley Lanari #56258

Crowley County Correctional Facility

P. O. Box 100

Olney Springs, Co. 81062

**CERTIFICATE OF SERVICE**

I, Robert Bradley Lanari, hereby certify that both a true and correct copy of the foregoing, Complaint Pursuant To 42 U.S.C. § 1983, was mailed via the United States Postal Service, postage prepaid, from the inmate mail system at the Crowley County Correctional Facility, P.O. Box 100, Olney Springs, Co. 81062, on the 12 th day of October, 2022, to the following:

Office of the Clerk
United States District Court
Alfred A. Arraj Courthouse
901 19th St.; Room A105
Denver, Co. 80294 - 3589

Mark C. Lockefeer #57470
Assistant Attorney General
Civil Litigation & Employment Section
1300 Broadway, 10th Floor
Denver, Co. 80203

Andrew D. Rigel; Esq.
Edmund M. Kennedy; Esq.
Hall & Evans; LLC
1001 17th Street; Suite 300
Denver, Co. 80202-2052

Robert Bradley Lanari

Robert Bradley Lanari #56258
Crowley County Correctional Facility
P. O. Box 100
Olney Springs, Co. 81062